# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

ADAM PLETCHER,
SAMANTHA PLETCHER,

       Plaintiffs,

                                   Case No: 20-cv-00811

v.

SPARKPLUG CAPITAL LLC,

       Defendant.

---

### AFFIDAVIT OF SUZANNE BIESENDORFER IN SUPPORT OF SPARKPLUG CAPITAL LLC's MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, INSUFFICIENT PROCESS, AND INSUFFICIENT SERVICE OF PROCESS

---

STATE OF COLORADO    )
                     ) ss.
COUNTY OF _Boulder_    )

I, Suzanne Biesendorfer, being duly sworn under oath, deposes and states as follows:

1.     That I am a Senior Paralegal employed by Sparkplug Capital, LLC ("Sparkplug") and am qualified to make this affidavit.

2.     That attached hereto as Exhibit A is a true and correct copy of the FedEx packaging label that was affixed to the package the Pletchers shipped to Sparkplug's Registered Agent.

3.     That attached hereto as Exhibit B is a true and correct copy of the documents that were included in the subject FedEx package.

4.     That neither Sparkplug nor an agent authorized to accept service on Sparkplug's behalf has been served with the summons and complaint in this action.

Dated this 17th day of November, 2020.

_____
Suzanne Biesendorfer

Signed and sworn to before me on
this 17th day of November, 2020.

_____
Corey van de Boogaard, Notary Public
My commission expires: February 1, 2021

COREY VAN DE BOOGAARD
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20174004924
MY COMMISSION EXPIRES FEBRUARY 1, 2021

# EXHIBIT A

Part # 156297-435 RRDB EXP 04/21

SHIP DATE: 05AUG20
ACTWGT: 0.50 LB
CAD: 6897282/SSF02110

BILL CREDIT CARD

ORIGIN ID:FEPA (847) 558-8830
ADAM QUINN FLETCHER

872 HUNTERS RIDGE DR

GENOA CITY, WI 53128
UNITED STATES US

TO: REGISTERED AGENCY SPARK PLUG
COGENCY GLOBAL INC.
7700 E ARAPAHOE RD SUITE 220

CENTENNIAL CO 80112

REF:

FedEx
Express

MON - 10 AUG 4:30P
EXPRESS SAVER

TRK# 3955 1990 1527

ST APAA

DSR
80112
CO-US DEN

RT 347
FT B04

# EXHIBIT B

Envalope 7



FOREVER / USA

Adam & Samantha
Pletcher
872 Hunters Ridge Dr.
Genoa City, WI
53128

## Service of a Complaint

**Service of a complaint may be made in one of the following ways:**

1.  <u>By Summons</u>

    Anyone over the age of 18 who is not a party to the lawsuit may personally serve a copy of the summons and complaint on each defendant. For example, a local sheriff or process server may, for a fee, serve the complaint. The person serving the complaint should provide the plaintiff with an "Affidavit of Personal Service" which the plaintiff then files with the Clerk of Court.

2.  <u>By Waiver</u>

    In order to request a waiver, the plaintiff must send the following four items to the defendant:

    (1)     AO Form 398, Notice of Lawsuit and Request for Waiver of Service of Summons plus an extra copy

    - AO Form 398 must be sent through first-class mail or other reliable means.

    (2)     A copy of the complaint with an identification of the court in which it was filed

    (3)     AO Form 399, Waiver of Service of Summons

    - The plaintiff will file the completed Waiver of Service. That filing date is considered the same as the date of service of the summons and complaint.

    - If the waiver (AO Form 399) is not timely returned (at least 30 days from the date it is sent, or 60 days from that date if the defendant is addressed outside any judicial district of the United States), the plaintiff must serve process as provided in the rule, but the plaintiff is allowed to recover costs of service unless there is good cause for the failure to waive service of summons.

    - The United States is not covered by the waiver of service provisions. (See number 5 below.)

    (4)     Self-addressed stamped envelope

3.  <u>Pursuant to the Rules of the State of Wisconsin</u> (included in this packet)

4.    <u>Pursuant to the Rules of the State in Which a Defendant Resides</u>

5.    <u>Serving the United States</u>

Service of a summons and complaint may be made upon the U.S. Attorney by:

- Delivery to the U.S. Attorney for the district where the action is brought - or to an Assistant U.S. Attorney, or a designated clerical employee of the U.S. Attorney's Office.  (The designation must be on file with the Clerk's Office.)

  <u>OR</u>

- Registered or certified mail addressed to the civil process clerk at the U.S. Attorney's Office.

When serving the United States, you must also serve the Attorney General and the agency involved by certified or registered mail.  The address of the Attorney General is as follows:

U.S. Attorney General<br>
Department of Justice<br>
Washington, D.C. 20530

Updated January 2013

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| *Adam Pletcher & Samantha Pletcher* | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. **20-C-0811** |
| *Sparkplug Capital LLC* | ) |
| *Defendant* | ) |

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To: _Spark Plug Capital LLC_

*(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

### Why are you getting this?

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within _30_ days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

### What happens next?

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date: _June 10, 2020_

_____
*Signature of the attorney or unrepresented party*

_Adam Pletcher_
*Printed name*

_872 Hunters Ridge Dr. Genoa City WI 53128_
*Address*

_adam@neotekcorp.com_
*E-mail address*

_847-558-9830_
*Telephone number*

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

*Adam Pletcher & Samantha Pletcher* )
              Plaintiff )
           v. )    Civil Action No. **20-C-0811**
*Sparkplug Capital LLC* )
              Defendant )

## WAIVER OF THE SERVICE OF SUMMONS

To: _*Sparkplug Capital LLC*_
    *(Name of the plaintiff's attorney or unrepresented plaintiff)*

    I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

    I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

    I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

    I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

                                       _____
                                       *Signature of the attorney or unrepresented party*

_____          _____
*Printed name of party waiving service of summons*         *Printed name*

                                       _____
                                            *Address*

                                       _____
                                         *E-mail address*

                                       _____
                                        *Telephone number*

---

### Duty to Avoid Unnecessary Expenses of Serving a Summons

    Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

    "Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

    If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

    If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OFWISCONSIN

*Adam Pletcher*
*Samantha Pletcher* **Plaintiff(s),**

**v.**

Case No. **20-C-0811**

*Sparkplug Capital LLC*
**Defendant(s).**

## CONSENT TO PROCEED BEFORE A MAGISTRATE JUDGE

This form must be filed with the Clerk of Court within 21 days of receipt. Although choosing to have your case decided by a magistrate judge is optional and refusal will not have adverse substantive consequences, the timely return of this completed form is mandatory.

If you do not consent to a magistrate judge hearing your case, a district judge will hear your case. Aside from cases subject to the Prison Litigation Reform Act, magistrate judges in this district generally, play no further role in civil cases pending before district judges and do not issue reports and recommendations.

Magistrate judges do not conduct felony trials, and therefore felony trials do not interfere with scheduling and processing of cases before magistrate judges

<u>Check one:</u>

☐ ~~STEPHEN C. DRIES~~ The undersigned attorney of record or pro se litigant **consents** to have Magistrate Judge ~~U.S. MAGISTRATE JUDGE~~ conduct all proceedings in this case, including a bench or jury trial, and enter final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b).

☐     The undersigned attorney of record or pro se litigant **refuses** to have a magistrate judge enter final judgment in this matter.

Signed this ____ day of _____, _____.
   (date)       (month)     (year)

_____
Signature of counsel of record or pro se litigant
  ☐ Plaintiff / petitioner (attorney or pro se litigant)
  ☐ Defendant / respondent (attorney or pro se litigant)
  ☐ Other party

## ASSIGNMENT OF CIVIL CASES EASTERN
## DISTRICT OF WISCONSIN

At the time a new civil action is filed, it is assigned by random selection to either a district judge or a magistrate judge in accordance with the local rules. Pursuant to the provisions of 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure, a United States Magistrate Judge may, with the consent of the parties, conduct all proceedings in this civil action, including a bench or jury trial and order the entry of judgment. The statute provides for direct appeal to the U.S. Court of Appeals for the Seventh Circuit.

Once the assigned district or magistrate judge has been selected, the local rules of this district require that each party to the action receive a copy of the "consent form." Each party shall complete the form and file it with the Clerk of Court **within 21 days** after its receipt.

If this case has been randomly assigned to a **district judge** and all parties consent to have the magistrate judge conduct all proceedings in the case, the district judge may enter an order transferring the case to the magistrate judge.

If this case has been randomly assigned to a **magistrate judge** and not all parties consent, then the case will be reassigned by random selection to a district judge. If all parties consent, the magistrate judge will conduct all proceedings in the action.

While the decision to consent or not to consent to the exercise of jurisdiction by the magistrate judge is entirely voluntary, the duty to respond to this order is **mandatory**. Your response shall be made to the Clerk of Court only on the form on the reverse side of this notice.

**IT IS THEREFORE ORDERED**, that you complete this form and file it with the Clerk of Court within **twenty-one (21) days** from receipt.

UNITED STATES DISTRICT COURT


s/William C. Griesbach
Honorable William C. Griesbach,
Chief Judge

(Rev. 03/08/2019)

# EXHIBIT B

## CIVIL COVER SHEET

**20-C-0811**

This JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| SAMANTHA PLETCHER<br>ADAM PLETCHER | SPARKPLUG CAPITAL LLC |

**(b)** County of Residence of First Listed Plaintiff    Walworth County, WI
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    New Castle County, DE
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

N/A

Attorneys *(If Known)*

---

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government Plaintiff

☐ 2   U.S. Government Defendant

☐ 3   Federal Question *(U.S. Government Not a Party)*

☒ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**

☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**

☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**

**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☒ 360 Other Personal Injury
☐ 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
☐ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 448 Education

**PERSONAL INJURY**
☐ 365 Personal Injury - Product Liability
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**PRISONER PETITIONS**

**Habeas Corpus:**
☐ 463 Alien Detainee
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty
**Other:**
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**

☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**LABOR**

☐ 710 Fair Labor Standards Act
☐ 720 Labor/Management Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**

☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

**BANKRUPTCY**

☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**

☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent - Abbreviated New Drug Application
☐ 840 Trademark

**SOCIAL SECURITY**

☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**

☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**

☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729(a))
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 485 Telephone Consumer Protection Act
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/ Exchange
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Information Act
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

---

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332
Brief description of cause:
Personal injury due to negligence, gross negligence, premises liability, fraud

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

U.S. District Court
Wisconsin Eastern

MAY 2 9 2020

FILED

# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SAMANTHA PLETCHER; and ADAM
PLETCHER

         Plaintiffs,

    vs.

SPARKPLUG CAPITAL LLC, a Delaware
Limited-Liability Company.

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. **20-C-0811**

**COMPLAINT FOR DAMAGES WITH
JURY DEMAND**

## COMPLAINT FOR A CIVIL CASE ALLEGING NEGLIGENCE, GROSS NEGLIGENCE, PREMISES LIABILITY, LOSS OF CONSORTIUM, AND FRAUD RESULTING IN PERSONAL INJURY
### (28 U.S.C. § 1332; Diversity of Citizenship)

Plaintiffs, Adam Pletcher and Samantha Pletcher for their complaint allege as as follows:

### PARTIES

1.     At all times relevant to this action, the plaintiffs, Adam Pletcher and Samantha Pletcher, have been married. The Pletchers live in Genoa City, Wisconsin, making them residents within the jurisdiction of this Court, and citizens of the State of Wisconsin.

    (a)     Samantha Pletcher

           872 Hunters Ridge Drive

           Genoa City, Wisconsin 53128

           phone: (262) 551-1066

           email: samantha@neotekcorp.com

(b)      Adam Pletcher

872 Hunters Ridge Drive

Genoa City, Wisconsin 53128

phone: (847) 558-9830

email: adam@neotekcorp.com

2.      The defendant, Sparkplug Capital LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its corporate headquarters located in the State of Colorado. Red Dot Storage is the doing business as (DBA) name which Sparkplug Capital LLC operates its storage facility services under, making them one and the same. Sparkplug Capital LLC is authorized to do, and in fact does, business in the State of Wisconsin.

(a)      Sparkplug Capital LLC

3970 Broadway Street

Boulder, Colorado 80304-1135

phone:

email:

## JURISDICTION & VENUE

3.      Jurisdiction in this Court is established by diversity of citizenship and damages in excess of $75,000 pursuant to 28 U.S.C. § 1332 by virtue of the fact that at all times relevant hereto Plaintiffs were and continue to be residents of and citizens of the Commonwealth of Wisconsin, Defendant Sparkplug Capital LLC was and continues to be a Delaware established limited liability company with its principal place of business in the State of Colorado and the underlying allegations which took place in Walworth County, Wisconsin.

4.      Venue is established in this District under 28 U.S.C. § 1391(a) as a substantial part of the events giving rise to this claim occurred in Genoa City, Wisconsin which is located within said District; to wit, the establishment of a contract

between Plaintiffs, and Defendant Sparkplug Capital LLC, the defendant's breaches of contract, breaches of warranties, express and implied, and the defendants' negligence pertaining to the purchase of the storage unit facility, requisite inspections, construction, and operation of the storage unit facility, leading up to the relevant events on or about May 29, 2017.

5.     Based upon Plaintiffs' information and at all times relevant hereto, Defendant Sparkplug Capital LLC, was and is doing business under the registered name of Red Dot Storage in multiple states and further doing business under the specific name of "Red Dot Store No. 10" for the premises located 180 Elizabeth Lane, Genoa City, WI 53128, (herein after "**Red Dot Storage No.10**") was and is operating premises in at least 16 states offering storage space to lease by the public, including but not limited to Plaintiffs.

## INTRODUCTION

6.     This case arises from the serious failure of a critical structural element that occurred on May 29, 2017, at the **Red Dot Storage No.10** premises. This structural failure caused a serious injury to Plaintiff Samantha Pletcher.

7.     On May 29, 2017 a structural failure in the form of a complete failure of the overhead unit door counterbalance system caused the door to rapidly fall onto the back of Samantha Pletcher as she was moving an item out of the rental unit.

8.     This structural failure which caused severe injury to Samantha Pletcher was foreseeable and completely avoidable had Defendant not been grossly negligent and negligent in its obligation to maintain its premises.

9.     The Plaintiffs would never have continued to lease storage space from the Defendant had Defendant not been fraudulent in its representations of operating and maintaining a safe and secure storage facility.

## GENERAL ALLEGATIONS

10. In or about August 2014 Defendant acquired the rental facilities located in Genoa City, WI that was previously owned and operated by Safeway Storage LLC

11. Plaintiffs were existing clients, having leased unit A027 from its previous owners, Safeway Storage

12. Plaintiffs received notice that ownership of the rental properties had moved from Safeway Storage to **Red Dot Storage No. 10** in or about August 2014 and continued to lease the same storage unit A027, now under the exclusive ownership and control of Defendant

13. Plaintiffs were informed that the monthly rental would increase slightly but the properties were being renovated to offer a higher level of safety, security and convenience.

14. Defendant promoted and continues to promote their rental storage units as "Safe. Simple. Storage"

15. Screenshot from www.reddotstorage.com promotional website home page

RED ● DOT
STORAGE

Locations    Specials    FAQ / Tips    What Size Unit?    Login / Pay Bill

Our Response to COVID-19



Safe. Simple. Storage.

16. Plaintiffs continued to lease the same A027 unit under **Red Dot Storage No.10** premises in good faith with the belief Defendant would improve and maintain the properties.

17. Each of the rental units at the **Red Dot Storage No.10** premises features its own integral door which is the sole method to gain access to the leased space.

18. Photograph showing exterior of unit A027 unit where incident occurred.



19. The storage space leased by Plaintiffs was a 10 foot wide by 20 foot deep unit which, at the time of the incident, featured a TracRite Rolling Curtain Overhead Door Model 944 (herein after referred to as "**TracRite Rolling Curtain Door**") approximately 10-feet in width and 8-feet in height.

20. This **TracRite Rolling Curtain Door** is equipped with two (2) torsion springs which act as counterbalance to offset the weight of the door

21. TracRite provides a manual which includes specific information on the installation, maintenance and parts of the Model 944 overhead door (herein after "**TracRite Rolling Curtain Door Manual**" attached and incorporated in its entirety as "Exhibit A")

22. The **TracRite Rolling Door Manual** calls out in conspicuous placement several warnings, each with larger font and alert icons the following:

   (a)    Warning from page one stressing that the torsion springs are under extreme tension which can cause SERIOUS INJURY or DEATH and that adjustments or repairs must be made by a qualified door mechanic using proper tools and instructions

## ⚠ WARNING

Rolling steel doors are large, heavy objects that move with the help of springs under extreme tension. Since moving objects and springs under tension can cause injuries, your safety and the safety of others depends on you reading and following the instructions in this manual. Check your work prior to operating door.

| POTENTIAL HAZARD | EFFECT | PREVENTION |
|---|---|---|
| MOVING DOOR | Can Cause Serious Injury or Death | Keep people clear of opening while door is moving. Get help or use support when lifting new door into place. |
| EXTREME SPRING TENSION | Can Cause Serious Injury or Death | Installation, repairs, and adjustments must be made by a qualified door mechanic using proper tools, methods, and instructions. Before winding torsion spring, make sure door is fully open and curtain is wrapped on barrel. |

   (b)    Caution from page one that spring tension is Critical; improper tensioning of the spring(s) can result in door damage

## ⚠ CAUTION

Spring Tension is Critical: Improper tensioning of the spring(s) can result in door damage and reduce the life of your door. The door should not slam up or down during operation. Please refer to Page 8; Fig. 12. No warranty claims will be honored due to damage caused by improperly tensioned spring(s).

(c)      Note on page 5 that white felt tape on the inside of door curtain

> ## NOTE!
>
> **DO NOT REMOVE WHITE FELT TAPE on the inside of the door curtain. It is a door component, NOT packing material.**

should not be removed and that it is a door component. Not packing material

(d)      Warning on page 8 that components are under extreme spring tension that can cause SERIOUS INJURY or DEATH. and that any adjustments or repairs must be made by a qualified door mechanic using proper tools and instructions

> ## ⚠ WARNING
>
> **Components under extreme spring tension can cause SERIOUS INJURY or DEATH. Adjustments and repairs must be made by a qualified door mechanic using proper tools and instructions. Do NOT attempt to adjust door tension unless the door is in the "UP" position. Winding bar should be solid steel 1/2" diameter rod or 3/8" x 1/2" flat.**

(e)      Caution on page 8 that spring tension is critical

> ## ⚠ CAUTION
>
> **Spring Tension is Critical: Improper tensioning of the spring(s) can result in door damage and reduce the life of your door. The door should not slam up or down during operation. No warranty claims will be honored due to damage caused by improperly tensioned spring(s).**

(f)     Page 9 details expected maintenance which includes monthly visual inspections of all door components

## 12. MAINTENANCE INSPECTION:

Visually inspect the entire door monthly for general cleanliness and ease of operation.
- Inspect the guides and curtain for wear and/or accidental damage.
- Inspect all fasteners and anchor bolts for loose, damaged, or missing parts.
- If door is equipped with a chain hoist mechanism, inspect it for missing or loose parts.

(g)     Page 9 details expected lubrication of critical components including the torsion spring at a frequency not to exceed every six months

LUBRICATION: Lubricate the following every six months. When operating in dusty or wet enviroments lubrication may be required more often.
- Guides: Open the door. Spray silicone spray or Zep 45™ onto the door guide runners and inside the guide.
- Latch: Spray the slide latch with silicone spray to promote smooth latch operation.
- Chain Hoist Parts: Apply a small amount of oil to roller chain.
- Spring: To ease friction and prevent squeaking apply silicone spray or Zep 45™ across the spring.

23. On or about May 29, 2017 Plaintiffs were moving items out of their rental unit.

24. Plaintiffs were unaware that a potentially dangerous and life-threatening incident would occur while they were moving items out of their rental unit

25. On or about the morning of May 29, 2017 Plaintiff Samantha Pletcher was dragging a wooden end table from the interior of the A027 Storage Unit to the exterior.

26. While underneath the **TracRite Rolling Curtain Door** the neglected and unmaintained torsion springs failed, causing the door to rapidly descend.

27. Plaintiff Samantha Pletcher was struck across the shoulder and upper back by the falling door

28. The overhead door struck with enough force to pin Plaintiff Samantha Pletcher between the end table she was bent over and dragging out at the time and the falling door.

29. The overhead door struck with enough force to momentarily cause Plaintiff Samantha Pletcher to lose consciousness.

30. Plaintiff Adam Pletcher had to forcibly lift the door off of his wife to allow her to free herself from between the door and end table.

31. Plaintiff Samantha Pletcher experienced excruciating pain radiating along her shoulder and upper back where the door struck her body.

32. This accident caused pain and suffering, resulting in serious injuries to Plaintiff Samantha Pletcher, including but not limited to deep bruising at the area of impact to the muscles & area of the spine. Plaintiff Samantha Pletcher continues to suffer from both physical and mental conditions which will cause her to suffer pain, mental distress, emotional distress, and otherwise for the rest of her life.

33. At no point in time were Plaintiffs, warned by Defendant of any potential risk arising from structural failures due to failing to abide by clearly articulated manufacturer maintenance requirements

34. As the owner, operator, possessor and/or maintainer, Defendant had a duty to exercise reasonable and due care in the leasing of storage space it offered to its business invitees, customers, and/or patrons so that the storage space would not be dangerous to life or limb of the public, including Plaintiffs and all other persons.

35. Inspection of the door after the incident on May 29, 2017 showed that both torsion springs failed with the right side snapping completely in two

36. Photo of torsion springs on or about May 31, 2017



37. Inspection of the door after the incident on May 29, 2017 showed that the white felt strips which the **TracRite Rolling Door Manual** stated were required parts of the door were, in fact, missing or damaged

38. A later inspection of the door after the incident on May 29, 2017 showed that the Defendant had replaced the broken torsion springs with larger, new torsion springs

39. Photo of replaced torsion springs taken on or about June 20, 2017





## FIRST CAUSE OF ACTION
## (NEGLIGENCE)

40.    Plaintiffs repeat and reallege each and every foregoing paragraph set forth above and incorporate the same by reference as though fully set forth at length herein.

41.    Disregarding its duty, Defendant, prior to, at the time of and after the incident, as the premises operator, is guilty of one or more of the following acts or omissions:

    (a)    failing its duty of care in operating a self-storage premises, and in selecting those charged with the task of acquiring, securing, inspecting and maintaining and the same.

    (b)    negligence in complying with clearly articulated manufacturer instructions relating to inspection and maintenance of the **TracRite Rolling Curtain Door** was a substantial factor in causing the injuries sustained by Plaintiffs.

    (c)    complete failure to inspect or maintain the storage units it leased to Plaintiffs and thousands of other customers which created an unreasonably dangerous condition eventually causing injury to Plaintiffs.

    (d)    failure to inspect the **TracRite Rolling Curtain Door** when it acquired the premises and complete failure to maintain the unit per manufacturer's explicit recommendations meant that the leased storage unit could not be safely used in the manner and for the purpose for which it was intended.

42.    Defendant owed Plaintiffs a duty to exercise due care in providing a safe place for its customers, including by ensuring that the premises were safe and that the leased storage units located therein were properly

installed, maintained, secured, and inspected and Defendant breached the Defendant's duty of care.

43. Defendant breached their standard and duty of care to Plaintiffs, including, without limitation, by failing to ensure that the structural elements at their facility were safe and secure, which breach led to the catastrophic failure of the counterbalance system for the **TracRite Rolling Curtain Door** suddenly and violently falling directly upon Plaintiff Samantha Pletcher's left upper back.

44. As a direct and proximate result of the negligence and carelessness of the **Defendant, Sparkplug Capital LLC**, Plaintiffs have suffered severe and serious personal injuries. The full nature and extent of Plaintiffs' injuries are still unknown and when the same are ascertained, Plaintiffs will assert them with particularity.

45. It was foreseeable to Defendant that, if the heavy **TracRite Rolling Curtain Door,** if neglected and not properly maintained, were to fail and fall, it could cause serious injuries to persons anyone situated directly below the door.

46. As a direct and proximate result of the foregoing negligence and carelessness of Defendant, Plaintiff Samantha Pletcher has suffered severe and serious personal injuries, and Defendant is liable for the same under the doctrine of negligence.

47. Plaintiff Samantha Pletcher has been required to engage the services of various medical providers, including emergency medical attention, to care for and treat her injuries. Plaintiff Samantha Pletcher is entitled to reimbursement for past and future medical bills incurred as a result of the injuries that have caused her pain and suffering, as well as lost income.

## SECOND CAUSE OF ACTION
## (NEGLIGENCE via RES IPSA LOQUITUR)

48. Plaintiffs repeat and reallege each and every foregoing paragraph set forth above and incorporate the same by reference as though fully set forth at length herein.

49. Defendant owed Plaintiffs a duty to exercise due care in providing a safe place for its invitees to its **Red Dot Storage No. 10** premises, and failed to meet this duty, and said actions and omissions as described above, were a breach of the Defendant's duty of care.

50. Getting struck in the spine, upper back and shoulder by a heavy steel rolling curtain overhead door when premises used in an intended or reasonably foreseeable manner does not ordinarily occur in the absence of someone's negligence.

51. Defendant held the exclusive control of the **TracRite Rolling Curtain Door** which fell upon Plaintiff Samantha Pletcher.

52. Plaintiff Samantha Pletcher did nothing to cause the **TracRite Rolling Curtain Door** to fall upon her.

53. As a direct and proximate result of the foregoing negligence and carelessness of Defendant, Plaintiff Samantha Pletcher has suffered severe and serious personal injuries, and Defendant is liable for the same under the doctrine of res ipsa loquitur.

54. Plaintiff Samantha Pletcher has been required to engage the services of various medical providers, including emergency medical attention, to care for and treat her injuries. Plaintiff Samantha Pletcher is entitled to reimbursement for past and future medical bills incurred as a result of the injuries that have caused her pain and suffering, as well as lost income.

## THIRD CAUSE OF ACTION

## (NEGLIGENCE via STRICT LIABILITY)

55. Plaintiffs repeat and reallege each and every foregoing paragraph set forth above and incorporate the same by reference as though fully set forth at length herein.

56. Inviting business customers to store personal items in storage units that are not inspected or maintained in any way creates potential for ultra-hazardous activity for which the Defendant is strictly liable to any party who suffers any damage as a result of the same, regardless of fault. Plaintiffs did not have any knowledge of the dangers involved when they were on the **Red Dot Storage No. 10** premises.

57. Plaintiff Samantha Pletcher, was injured and suffered damages, as described above, due to the above-described events when the storage unit door crashed down on her, for which the Defendant is strictly liable to the Plaintiffs, regardless of fault.

58. As a direct and proximate result of the foregoing negligence and carelessness of Defendant, Plaintiff Samantha Pletcher has suffered severe and serious personal injuries, and Defendant is liable for the same under the doctrine of strict liability.

59. Plaintiff Samantha Pletcher has been required to engage the services of various medical providers, including emergency medical attention, to care for and treat her injuries. Plaintiff Samantha Pletcher is entitled to reimbursement for past and future medical bills incurred as a result of the injuries that have caused her pain and suffering, as well as lost income.

## FOURTH CAUSE OF ACTION
## (GROSS NEGLIGENCE)

60.   Plaintiffs repeat and reallege each and every foregoing paragraph set forth above and incorporate the same by reference as though fully set forth at length herein.

61.   Defendant acted and otherwise conducted themselves as alleged herein maliciously, fraudulently, oppressively, with a conscious disregard and/or malice for Plaintiffs' rights, and acted with an improper motive amounting to malice for which an award of punitive damages in an amount in excess of five times the amount of compensatory damages Plaintiffs were caused to suffer by said wrongful conduct by Defendant, all to be determined at trial. Defendant acted with actual malice and committed intentional, reckless, wanton, willful and gross acts which caused injury to Plaintiffs

62.   As a direct and proximate result of Sparkplug Capital LLC's wrongful acts or omissions, negligence, gross negligence, recklessness, wanton and willful disregard for the safety of their business invitees, customers, and/or patrons like Plaintiffs as described above, Plaintiff Samantha Pletcher has, in addition to the losses and damages aforedescribed, experienced pain, suffering, scarring, disability, mental anguish, weight gain, loss of enjoyment of the usual activities of daily life, and a loss of income and the ability to earn income in the future permanently for the rest of her life.

## FIFTH CAUSE OF ACTION
## (PREMISES LIABILITY)

63.   Plaintiffs repeat and reallege each and every foregoing paragraph set forth above and incorporate the same by reference as though fully set forth at length herein.

64.   At times pertinent hereto, Defendant, was engaged in the business of leasing storage space to the public.

65.   Defendant is now, was on May 29, 2017 and was for at least two years but not more than four years prior to the incident, the owner of the **Red Dot Storage No.10** premises in Genoa City and was responsible for its operation and maintenance, including each individual storage unit, which encompasses a framed storage unit with an integrated rolling overhead door being the only point of access to each unit for use by invitees and others lawfully on said premises.

66.   Defendant business operations in the state of Wisconsin fall under the regulation and authority of Wisconsin Statute 704.90 which regulates Self-service storage facilities

67.   Defendant is and functioned as an Operator as defined under Wisconsin 704.90(1)(d) at all times relevant to this complaint

68.   On May 29, 2017, Plaintiff Samantha Pletcher, was lawfully on the premises as a business invitee under premises liability or as a lessee as defined under Wisconsin 704.90(1)(c).

69.   On May 29, 2017, it was the sole duty of Defendant to exercise ordinary care in maintaining each and every storage unit so as to not put its customers, including Plaintiffs, at needless risk of serious injury while lawfully on the premises.

70.     Disregarding its duty in the premises, Defendant, prior to, at the time of and after the incident, as the premises operator, is guilty of one or more of the following acts or omissions:

(a)     Negligently failed to inspect the premises prior to its acquisition of the same from its previous owners;

(b)     Negligently failed to provide any maintenance or inspection whatsoever of critical structural elements in each leased storage unit, including Plaintiffs, with obvious knowledge that failing to do so created an extremely dangerous condition;

(c)     Negligently failed to develop, establish to execute any maintenance schedule, whatsoever, to gain access to leased storage units in order to inspect and maintain the structural elements of said units.

(d)     Negligently permitted persons lawfully on the premises, including plaintiff, to use the storage units when the Defendant knew, or by the exercise of reasonable care should have known, of its dangerous condition; and,

(e)     Negligently failed to warn the Plaintiff of the dangerous condition in the area.

71.     As a direct and proximate result of the foregoing negligence and carelessness of Defendant, Plaintiff Samantha Pletcher has suffered severe and serious personal injuries, and Defendant is liable for the same under the doctrine of premises liability.

72.     Plaintiff Samantha Pletcher has been required to engage the services of various medical providers, including emergency medical attention, to care for and treat her injuries. Plaintiff Samantha Pletcher is entitled to reimbursement for past and future medical bills incurred as a result of

the injuries that have caused her pain and suffering, as well as lost income.

## SIXTH CAUSE OF ACTION
## (LOSS OF CONSORTIUM)

73. Plaintiffs repeat and reallege each and every foregoing paragraph set forth above and incorporate the same by reference as though fully set forth at length herein.

74. As a direct and proximate result of the injuries caused by the Defendant's negligence and other actions as described herein, Plaintiff Adam Pletcher has suffered and continues to suffer, the loss of the support, maintenance, society, comfort, attention, services, love and affection of his wife, Samantha.

75. Before suffering these injuries, Samantha was able to and did perform the duties of a wife, including assisting in maintaining the home, and providing love, companionship, affection, society, sexual relations, moral support, and solace to Adam, including, without limitation, working outside the home to provide financial support for the Pletchers.

76. As a direct and proximate result of the injuries, Samantha has been unable to perform the duties of a wife in that she can no longer, for example, provide substantial assistance with housework, and participate in family, recreational, or social activities with Adam in the same manner as before, and has been severely limited in her ability to contribute to the household income.

77. Due to the nature of the injuries sustained by Samantha, and the severe physical and psychological strains and stress they cause her, Samantha is no longer able to provide Adam with love, companionship, affection, sexual relations, society, moral support, and solace to the same degree

and in the same manner as before the injuries described herein were sustained.

78. Because of these injuries, upon information and belief, Samantha will be unable to perform these duties in the future. Adam is therefore deprived of and will be permanently deprived of his spouse's consortium.

## SEVENTH CAUSE OF ACTION
## (COMMON LAW FRAUD)

79. Plaintiffs repeat and reallege each and every foregoing paragraph set forth above and incorporate the same by reference as though fully set forth at length herein.

80. Defendant made material representations that were false and that were either known to be false when made or were asserted without knowledge of their truth. Defendant operates, manages and leases spaces at self-storage facilities in at least sixteen states

81. The entire business operation revolves around and relies on storage units which utilize and rely on overhead steel doors as the only way to access each leased storage space by its customers.

82. Defendant is the owner and operator of at least 154 storage facilities with a cumulative total of tens of thousands of overhead roll down doors of similar function and design as the one that failed at its **Red Dot Storage No.10** premises.

83. These doors are an integral structural component under the sole control, responsibility and duty of Defendant.

84. As such, it is incumbent and expected that Defendant has the knowledge, experience and understanding of the integral structural elements of each storage unit.

85.     Defendant utilizes the slogan "Safe. Simple. Secure" throughout its advertising as an overt representation of its experience, understanding and operation and maintenance of its premises.

86.     Contrary to its representations, Defendant made and continues to make the following misrepresentations:

(a)     Misrepresentations regarding the safety of the storage units it leases to the public;

(b)     Misrepresentations as to the existence, occurrence and frequency of occurrences, or inspections and/or maintenance of the storage units it leases to the public;

(c)     Defendant intended that these misrepresentations be relied upon by the public as well as potential and existing customers, including Plaintiffs.

(d)     Plaintiffs did rely upon the misrepresentations that caused Plaintiff's injuries.

(e)     Defendant's misrepresentations were the proximate and/or producing cause of Plaintiff's injuries.

## EIGHTH CAUSE OF ACTION
## (FRAUDULENT MISREPRESENTATION)

87.     Plaintiffs repeat and reallege each and every foregoing paragraph set forth above and incorporate the same by reference as though fully set forth at length herein.

88.     Defendant engaged in the business of leasing storage units to the public. By their advertising, sales literature, or otherwise, Defendant made a misrepresentation of a material fact concerning the safety of its premises to Plaintiff and the public.

89.     Plaintiff justifiably relied on Defendant's misrepresentations in leasing storage space. Plaintiffs have suffered physical harm proximately caused by Defendant's misrepresentations regarding the safety of its premises.

## RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant Sparkplug Capital LLC, for their compensatory damages in an amount in excess of Seventy Five Thousand and 00/100 Dollars ($75,000.00), punitive damages in an amount to be determined at trial, but in excess of Seventy Five Thousand and 00/100 Dollars ($75,000.00), the costs of this litigation, their attorney fees, prejudgment and post-judgment interest, special damages in an amount in excess of Seventy Five Thousand and 00/100 Dollars ($75,000.00), that the court award plaintiff the opportunity to amend or modify the provisions of this Complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and any and all other relief to which they may be entitled.

Respectfully submitted,

Dated: May 28, 2020      By: _____

                                 Adam & Samantha Pletcher
                                 Plaintiffs

# ROLLING CURTAIN DOOR MANUAL

## INSTALLATION • MAINTENANCE • PARTS

### Model 944



| PHONE | 800 448 8979 |
| FAX | 800 236 8722 |
| WEBSITE | www.tracrite.com |
| EMAIL | tr@tracrite.com |
| ADDRESS | 314 Wilburn Road |
| | Sun Prairie, WI 53590 |



Trac•Rite
Roll-up Doors



This manual MUST be left with the owner.

Thank you for purchasing Trac-Rite's model 944 door. The following is an instructional guide to take you through the steps of installing your new door. Be sure to read and understand this entire installation manual including the warnings, cautions, and notes before starting the installation of your new Trac-Rite door.

The following terms are defined as:
<u>WARNING</u> - serious personal injury or death can result from failure to follow instructions.
<u>CAUTION</u> - minor injury or property damage can result from failure to follow instructions.
<u>NOTE</u> - special attention should be given.

## ⚠ WARNING

Rolling steel doors are large, heavy objects that move with the help of springs under extreme tension. Since moving objects and springs under tension can cause injuries, your safety and the safety of others depends on you reading and following the instructions in this manual. Check your work prior to operating door.

| POTENTIAL HAZARD | EFFECT | PREVENTION |
|---|---|---|
| MOVING DOOR | Can Cause Serious Injury or Death | Keep people clear of opening while door is moving. Get help or use support when lifting new door into place. |
| EXTREME SPRING TENSION | Can Cause Serious Injury or Death | Installation, repairs, and adjustments must be made by a qualified door mechanic using proper tools, methods, and instructions. Before winding torsion spring, make sure door is fully open and curtain is wrapped on barrel. |

## ⚠ WARNING

Components under extreme spring tension can cause SERIOUS INJURY or DEATH. Adjustments and repairs must be made by a qualified door mechanic using proper tools and instructions. Do NOT attempt to adjust door tension unless the door is in the "UP" position. Winding bar should be solid steel 1/2" diameter rod or 3/8" x 1/2" flat.

## ⚠ CAUTION

Spring Tension is Critical: Improper tensioning of the spring(s) can result in door damage and reduce the life of your door. The door should not slam up or down during operation. Please refer to Page 8; Fig. 12. No warranty claims will be honored due to damage caused by improperly tensioned spring(s).

## ⚠ WARNING

Improper installation of anchoring devices or installation into unsound material may result in premature product wear, product failure, property damage or serious personal injury.

Case 2:20-cv-00811-LA   Filed 11/18/20   Page 37 of 47   Document 16-3

## Proprietary Notice

Information contained in this document is copyrighted by Trac-Rite and may not be duplicated in full or part by any person without prior written approval of Trac-Rite. Its purpose is to provide the user with adequate detailed documentation to efficiently install a model 944 rolling curtain door.

## For Customer Support regarding:

Parts orders
Technical help
Emergency support
Installation questions
Damage
Shortages

Please Call: 1-800-448-8979

---

# NOTE!

**DO NOT CUT BANDS which hold door in a roll until instructed to do so. Trac-Rite will not guarantee or accept responsibility if door is not installed as instructed.**

---

## 1. INSPECTION:

Door and Hardware: Upon receiving the door shipment, immediately inspect the door and hardware for damage. Verify the product received with the packing list. Damage and/or shortages should be reported immediately to Trac-Rite customer service at 800-448-8979. Please have your bill of lading and packing list to reference when reporting shortages or damage. Do not install damaged material without authorization from Trac-Rite.

Door Opening Inspection *(See Figure 1)*:

- Is the framed opening width and height the same size as the door ordered? *(A x B)*
- Are the door jambs plumb and square?
- Is the floor level and square with the door jambs?
- Is there adequate jamb side clearance? *(E)*
- Is there adequate clearance above the door curtain roll? *(G)*
- Is there adequate clearance in front of the roll? *(F)*
- Are the jambs structurally and/or dimensionally adequate to accept door brackets and guides?

## 2. PREPARATION:

Clean the work area. Remove all debris and sharp objects from the area where the door will be placed on the floor. Sweep the area clean. It is also recommended that the door curtain assembly be placed on a piece of cloth or cardboard to help ensure that the finished door surfaces will not be damaged while the door is being prepared for installation.

Recommended tools for assembly:

- Wrenches or sockets 7/16" and 1/2" sizes
- Drill or screw gun
- 3/8" and 7/16" hex drivers (wood mounting)
- 5/16" hex driver and 3/8" drill bit (steel mounting)
- 5/16" and 7/16" hex drivers and 5/16" masonry bit (concrete or masonry mounting)
- C-clamps or vise grips
- Safety glasses
- Work gloves
- Pliers

---



A - FRAMED OPENING WIDTH
B - FRAMED OPENING HEIGHT
C - MINIMUM BRACKET MOUNTING WIDTH:
    4"[10cm] FOR METAL OR WOOD;
    6"[15.2cm] FOR MASONRY
D - MINIMUM HEADER HEIGHT:
    7-1/2"[19cm]
E - MINIMUM JAMB WIDTH:
    2"[5cm] FOR METAL OR WOOD;
    4"[10cm] FOR MASONRY
F - BACK ROOM:
    18"[46cm]*
G - HEAD ROOM:
    15"[38cm]*
    16"[41cm]* DOORS 7'1" AND HIGHER
H - SIDE ROOM:
    4"[10cm] FOR METAL OR WOOD;
    (9"[23cm] ON A SIDE WITH A CHAIN HOIST)
* ADD 1"[25mm] FOR INSULATED DOORS



SIDE VIEW    FRONT VIEW

**Figure 1**

Case: 2:20-cv-00611-LA Filed: 11/16/20 Page: 38 of 47 Document: 16-3

T R A C - R I T E



**GENERAL ASSEMBLY LAYOUT**

OUTSIDE

WALL | DOOR OPENING | WALL

INSIDE

DOOR NEST

LEFT BRACKET

RIGHT BRACKET

LEFT GUIDE | RIGHT GUIDE

**Figure 1A**



WHIZ-NUT & 5/16" TRACK BOLT

TENSION PAWL

BRACKET TAB

RIGHT HAND DOOR BRACKET

DOOR GUIDE

BENT CURTAIN LEAD IN

**Figure 2**



INSIDE OPENING LOOKING OUT

NOTE DIRECTION AND POSITION OF BOTTOM SEAL

DOOR NEST →

**Figure 3**

### 3. BRACKET AND GUIDE ASSEMBLY

**3.1** Position the guides and brackets inside the building on the floor near their mounting location.

**3.2** Place the guides on the ground with the mounting holes facing the ground and the bent curtain lead-in up and toward the door opening *(See Figure 2 for example of right hand guide)*.

**3.3** Now place each bracket with the correct guide. Each bracket is labeled left or right *(See Figure 1A)*.

**3.4** Attach a bracket to each guide with one (1) 5/16" flat head track bolt and one (1) whiz-nut as shown in *Figure 2*. Nuts go to outside of guide. MAKE SURE THE BACK OF THE BRACKET AND GUIDE ARE FLUSH WHEN DONE MOUNTING BOTH BRACKETS *(See Figure 4)*.

**3.5** Place a protective material on the floor of the work area to protect door nest while on the floor.

**3.6** With enough room between the guides for the door nest, bring the nest in and lay it between the guides on the floor. Orient the door nest in the opening as shown in *Figure 3*.

**3.7** Slide the door bracket over the door axle, through the bearing. If needed, rotate the tension wheel to allow the adjustment wheel to slide past the tension adjustment pawl.

**3.8** Install a steel washer onto the axle and secure with cotter pin through axle's hole. If the washer blocks the cotter pin hole, don't use the washer.

**3.9** Using pliers, bend both ends of the cotter pin back to secure it.

Repeat steps 3.7 - 3.9 for other side of door.

www.tracrite.com

## ⚠️CAUTION

Use proper lifting equipment and correct lifting procedures to avoid injury.

## NOTE!

DO NOT LIFT BY THE GUIDES! They will bend and become unusable. For larger doors, a third person or lifting equipment may be required.

**4. Door Mounting**

**4.1** With one person on each end of the door nest, lift it and the attached brackets/guides into position.

**4.2** Temporarily secure door assembly to jamb with C-clamps, vise grips, or bar clamps.

**4.3** Center the door in the opening with the door brackets perpendicular to the mounting surface.

## NOTE!

The door brackets will flare away from the opening to allow for the use of the tension system.

*Steel jambs*
**4.4s** Position the door assembly in the opening as shown in Figure 4, and drill a 3/8" hole in the jamb to match up with the upper hole in the bracket if one is not there already.

**4.5s** Using the supplied rounded head 5/16" carriage bolts, attach both door brackets to jambs. Drive a tek screw into the lowest small hole through the bracket and into the jamb.

*Wood/masonry jambs*
**4.4w** Drill through both slots. Hole sizes for masonry or wood may vary, depending on the type of fastener required. Verify the fastener size before drilling *(See Figure 4).*

**4.5w** Using the supplied hardware, bolt both door brackets to jambs. Use two (2) fasteners appropriate for your jamb construction.

**4.6** After both door brackets are secured to the jambs, remove temporary clamping devices.



**ALTERNATIVE FASTENERS**

2) WOOD FASTENERS PER BRACKET
5/16" X 1 5/8" LAG BOLT (P/N 502860)

2) MASONRY ANCHORS PER BRACKET
5/16" X 1 1/2" ANCHOR (P/N 508330)



DOOR JAMB (STEEL OR WOOD)

DRILL HOLES INTO DOOR JAMB FOR WOOD AND MASONRY

DOOR NEST

5/16" CARRIAGE BOLT/NUT WITH TEK-SCREW FOR METAL JAMB

DOOR GUIDE



METAL JAMBS
5/16"-18 CARR. BOLT & NUT
2 PER BRACKET

WOOD JAMBS
SCREW, HWH, 5/16" X 1 1/8"
2 PER BRACKET

METAL JAMBS
SCREW, HWH SELF-DRILLING 1/4"-14 X 7/8"

WOOD JAMBS
SCREW, HWH, #14 X 1 1/2"

MOUNTING BRACKET

**Figure 4**

800-448-8979

T R A C - R I T E



| | HEIGHT | |
|---|---|---|
| WIDTH | up to | 7' 0" | 10' 4" |

Spring Tension (Number of turns)

**Figure 5**

# NOTE!

When installing multiple doors of the same size, confirm the first door is operates correctly and is properly tensioned and apply the same tensioning method to all doors.

# ⚠ WARNING

Care must be taken to secure door so it does not spin around free, as this may cause personal injuries and damage to door curtain. Door is free to spin until door stops and keepers are installed.

## 5. DOOR TENSIONING:

**5.1** Determine the proper number of nest rotations needed to tension the door, based on the door size (See *Figure 5*). Rotate the nest towards the door opening the appropriate number of turns to tension the system (See *Figure 6*).

**5.2** Hold the door tightly to prevent unwinding. Remove the stretch wrap and cardboard strips wrapped around the door curtain and discard.

# NOTE!

DO NOT REMOVE WHITE FELT TAPE on the inside of the door curtain. It is a door component, NOT packing material.

**5.3** Guide the door curtain carefully into the door guides and pull it down to approximately waist level.

**5.4** Hold the door in position until the door stops and keepers are installed.



ROTATION DIRECTION TOWARDS WALL

DOOR CURTAIN

STRETCH WRAP & CARDBOARD STRIPS

**Figure 6**

## ⚠ WARNING

**Immediately install keepers and door stops. These devices will prevent the door from rolling up out of the guides and possibly causing injury.**

### 6. KEEPER AND TOP STOP ASSEMBLY

**6.1** Remove whiz nut from each side of door bottom bar *(See Figure 7)*.

**6.2** Attach one keeper to the bottom interior edge of each side of the door with one (1) 1/4" carriage bolt and whiz nut that was just removed. On doors with two handles, install one of the handles as you install the left side keeper *(See Figure 10)*.

**6.3** Tighten whiz nuts to fasten keepers.

**6.4** Slide the stops up into position so that the hook tab mates with the upper hole on the stop *(See Figure 7)*. Fasten each door stop to each bracket as shown using one (1) 5/16" track bolt and nut through the lower hole of the stop.

## ⚠ CAUTION

**Excessive force in operation may cause damage to the door. If the door binds, adjust guides to allow appropriate movement.**

### 7. SECURING THE GUIDES

**7.1** Pull the door down to within 6" of the floor *(See Figure 8)*. Adjust the door guides so there is 1/8" to 1/4" of play side to side. If the clearance is too small the door will be hard to operate. Too much clearance will allow the door to move side to side excessively and may cause the door to bind.

**7.2** Attach the guides to the jambs as follows:

**7.2a** For steel jambs, secure with supplied Tek screws, using one fastener per mounting hole.

**7.2b** For wood jambs, secure with supplied lag bolts, using one fastener per mounting hole.

**7.2c** For masonry jambs, install masonry clips along the guide height, using one clip located next to each mounting hole on the guide. Make sure the clips are flush with the back of the guide. Attach each clip to the guide with two (2) small (#12-14 x 3/4") supplied Tek screws *(See Figure 8)*. Drill a hole in the masonry and fasten the clip in place using supplied anchors.



DOOR AXLE ASSEMBLY NOT SHOWN FOR CLARITY

BENT CURTAIN LEAD IN
HOOK TAB
DOOR BRACKET
DOOR STOP
5/16" TRACK BOLT & NUT
DOOR GUIDE
KEEPER
1/4" CARRIAGE BOLT & NUT
BOTTOM OF
DOOR CURTAIN

**Figure 7**

800-448-8979



DOOR GUIDE
DOOR CURTAIN
BLOCK JAMB
MAINTAIN 1/8 TO 1/4" GAP (3-6MM)
BETWEEN GUIDE AND WEAR GUARD
NON-MASONRY
FASTENING HOLES
MASONRY ANCHOR
MASONRY CLIP
TEK SCREWS #12-14 x 3/4"

**Figure 8**



**Figure 9**

PULL ROPE HANDLE

## 8. FINAL ASSEMBLY

**8.1** Pull rope handle: Tie a knot in one end of the rope. Slide the plastic handle onto the rope and pull the knot up into the handle. Pass the other end of the rope through the hole in the center of the bottom edge of the door and tie another knot in the end to keep the rope from pulling through *(See Figure 9).*



EXTERIOR HANDLE

BOTTOM ASSEMBLY

**Figure 10**

**8.2** Exterior handle: Attach the handle(s) to the bottom exterior edge of the door with two (2) 1/4" carriage bolts and whiz nuts provided *(See Figure 10).* Doors 8' wide and larger will have two handles.



**Figure 11**

**8.3** Attach the guide warning label *(See Figure 11)* to wall next to the guide at eye level. If mounting to an unfinished surface such as bare masonry or wood, attach the label to a nonporous surface and use mechanical fasteners to mount on wall.

www.tracrite.com

7

T R A C - R I T E

> ⚠ **WARNING**
>
> Components under extreme spring tension can cause SERIOUS INJURY or DEATH. Adjustments and repairs must be made by a qualified door mechanic using proper tools and instructions. Do NOT attempt to adjust door tension unless the door is in the "UP" position. Winding bar should be solid steel 1/2" diameter rod or 3/8" x 1/2" flat.

## 9. ADJUSTING DOOR SPRING TENSION

**9.1** A properly tensioned door should be balanced (does not fall closed or spring open) when opened to waist level. Step on the handle to close door fully.

**9.2** To add tension, insert winding bar in the rectangular hole in the tension wheel and pull down until ratchet clicks. Move up slightly until ratchet locks in place *(See Figure 12)*. If more tension is needed, move winding bar to the next hole in the tension wheel and repeat as necessary.

**9.3** To remove tension, insert winding bar into tension wheel and move down 1" to unlock ratchet. Push the tension lock pin toward wall and raise winding bar 2". Release tension lock pin. Move up 1/8 turn until the ratchet locks in place.

**9.4** If door has two tensioners be sure to equally add or remove tension to each side of door.



**Figure 12**

> ⚠ **CAUTION**
>
> Spring Tension is Critical: Improper tensioning of the spring(s) can result in door damage and reduce the life of your door. The door should not slam up or down during operation. No warranty claims will be honored due to damage caused by improperly tensioned spring(s).

## 10. OPTIONAL FIELD INSTALLED DRAFT STOP OR BRUSH SEAL

**10.1** Close the door before installing the draft stop. Note that with the door down, the curtain may "bow" slightly near the top; this bowing is normal. For the draft stop to be effective, it should follow the "bow" in the door curtain so that it stays in contact across the entire width of the door curtain. Starting at one end, attach to header every 9" with appropriate fasteners. If necessary, trim excess at other end.

**10.2** Close the door before installing the brush seal. Position brush seal so it just touches the flat portion of the inside of the curtain *(See Figure 13)*. Fasten brush seal to jamb every 12" with appropriate fasteners.



**Figure 13**



**Figure 14**

(Labels in figure: DOOR CURTAIN ASSEMBLY, LEFT DOOR GUIDE, NUT, LOCK WASHER, SLIDE BAR, HEX NUTS, INT. LOCK STRIKE, ONE-WAY SCREWS, LOCK COVER, CARRIAGE BOLTS)

## 11. OPTIONAL INTERIOR LOCK INSTALLATION

**11.1** Position door at waist level.

**11.2** Assemble components as shown in *Figure 14*, noting that two (2) high collar lock washers are placed over each 1/4" one-way screw to allow the lockbar to slide freely.

**11.3** As the 1/4" screws are being tightened, move the lockbar to assure that the high collar lock washers are inside the slots in the lockbar.

## 12. MAINTENANCE INSPECTION:

Visually inspect the entire door monthly for general cleanliness and ease of operation.

- Inspect the guides and curtain for wear and/or accidental damage.
- Inspect all fasteners and anchor bolts for loose, damaged, or missing parts.
- If door is equipped with a chain hoist mechanism, inspect it for missing or loose parts.

Cleaning: No specific cleaning procedures are absolutely required. Clean all parts of the door and guides as needed.

LUBRICATION: Lubricate the following every six months. When operating in dusty or wet enviroments lubrication may be required more often.

- Guides: Open the door. Spray silicone spray or Zep 45™ onto the door guide runners and inside the guide.
- Latch: Spray the slide latch with silicone spray to promote smooth latch operation.
- Chain Hoist Parts: Apply a small amount of oil to roller chain.
- Spring: To ease friction and prevent squeaking apply silicone spray or Zep 45™ across the spring.

www.tracrite.com

TRAC-RITE



**Door Assembly - Parts Layout**

DRUM
DOOR CURTAIN ASSEMBLY
AXLE
OPTIONAL DRAFT STOP
WARNING LABEL
LIVE AXLE ASSEMBLY
SPRING
TENSION ADJUSTMENT WHEEL
DOOR STOP
LEFT DOOR BRACKET
FELT TAPE
MOUNTING FASTENERS
(WOOD, MASONRY, METAL)
OPTIONAL SPACEGUARD LOCK
SPACEGUARD LATCH
DOOR GUIDE
OPTIONAL MASONRY CLIP
OPTIONAL CURTAIN WINDLOCKS
PULL ROPE HANDLE
BOTTOM ASSEMBLY
EXTERIOR HANDLE
KEEPER
WEAR GUARD

800-848-8979

**Proprietary Notice**

Information contained in this document is copyrighted by Trac-Rite and may not be duplicated in full or part by any person without prior written approval of Trac-Rite. Its purpose is to provide the user with adequate detailed documentation to efficiently install a model 944 rolling curtain door.



PHONE        800 448 8979
FAX          800 236 8722
WEBSITE      www.tracrite.com
EMAIL        tr@tracrite.com
ADDRESS      314 Wilburn Road
             Sun Prairie, WI 53590



© Trac-Rite

522000 rev H (04/12)